■ DABBAH SECURITIES CORPORATION, Appellant, v CROESUS CAPITAL CORPORATION, Defendant, and NORTHWEST CAPITAL PARTNERS, L.L.C., et al., Respondents. [747 NYS2d 82]

On or about February 3, 1999, defendant Croesus Capital Corporation (Croesus) deposited 500,000 shares of defendant Eclipse Entertainment Group, Inc. (Eclipse) in an account at plaintiff Dabbah Securities Corporation (Dabbah) pursuant to a margin agreement executed by Dabbah, a securities intermediary, nonparty Investec/Ernst & Co. (Ernst), Dabbah's clearing agent, and Croesus. Croesus, upon depositing the shares, delivered Certificate No. 1257 (the Certificate) to Dabbah, which bore the appropriate stock power and corporate resolution, and which did not indicate that it was subject to any restrictions on its sale or transfer. Ernst thereafter submitted the Certificate to the Depository Trust Company (the DTC) in order to transfer the shares on the books of the issuer (Eclipse) and credit Ernst's account.

Croesus had instructed Dabbah to sell the shares if a certain price could be obtained and when a purchase could not be located at the price specified, Croesus, on February 11, 1999, directed Dabbah to transfer the Eclipse shares to an account maintained by Croesus at Janney Montgomery Scott (Janney), another brokerage firm. Ernst subsequently authorized the transfer and Janney ultimately transferred 350,000 shares to various third parties.

Croesus, however, unbeknownst to Dabbah, had, a week before it deposited the Eclipse shares with Dabbah, entered into a letter agreement with defendant Northwest Capital Partners, L.L.C. (Northwest), a venture capital firm which provided consulting services to Eclipse. The agreement provided that if Croesus was unable to arrange a sale of the

shares within 10 days of January 26, 1999, then Croesus would transfer the shares to an unnamed client of Northwest. Northwest claims not to qualify as a broker-dealer, or securities advisor, under applicable securities laws, that nonparty Bonn Securities, Ltd. (Bonn) is the true owner of the shares, and that defendant Liberty Transfer Co. (Liberty) was Eclipse's transfer agent.

Ernst, on or about March 8, 1999, was advised by Eclipse and Northwest, through Liberty, that the Certificate had been "stop transferred" because of Croesus's failure to return the shares within the time frame specified in the letter agreement. Dabbah and Ernst thereafter attempted to recover the shares from Janney and its transferees, but were only able to recover approximately half of the shares transferred. Ernst then commenced an action against Janney, Northwest, Eclipse and Croesus in an effort to recover the remaining shares, which action was settled by stipulation providing, inter alia, that Janney would transfer the 250,000 shares of Eclipse stock to Ernst, thereby eliminating the shortage in Ernst's account at the DTC. Ernst, however, incurred $26,544.97 in legal fees in prosecuting its action, which it debited to Dabbah's account pursuant to a separate agreement it had with Dabbah as Dabbah's clearing agent.

Dabbah subsequently commenced this action against Croesus, Northwest, Eclipse and Liberty in an effort to recoup the $26,544.97. Croesus defaulted in Dabbah's action, and a judgment was entered against Croesus in the amount of $28,509.49, which also adjudged that Croesus had no interest in the Eclipse stock. Dabbah then moved for summary judgment against the remaining defendants, seeking declaratory relief in that it was a "protected purchaser" under article 8 of the Uniform Commercial Code (UCC) and, therefore, was entitled to have the shares registered in Dabbah's or Ernst's name. Dabbah reasoned that it would sell the shares to satisfy the default judgment against Croesus, and pay over any excess proceeds to Croesus.

The motion court denied Dabbah's motion on the grounds that Dabbah failed to establish contractual privity with defendants, and that it did not qualify as a protected purchaser under UCC 8-303. We disagree as to Dabbah's status as a protected purchaser and affirm for different reasons.

There is no dispute that Dabbah is a "securities intermediary" as that term is defined in UCC 8-102 (a) (14). UCC 8-303 (a) defines a protected purchaser as:

"a purchaser of a certificated or uncertificated security, or of an interest therein, who:

"(1) gives value;

"(2) does not have notice of any adverse claim to the security; and

"(3) obtains control of the certificated or uncertificated security."

UCC 8-303 (b) further provides that "[i]n addition to acquiring the rights of a purchaser, a protected purchaser also acquires its interest in the security free of any adverse claim."

With regard to the first requirement, UCC 8-116 states, in pertinent part, that "[a] securities intermediary that receives a financial asset and establishes a security entitlement to the financial asset in favor of an entitlement holder is a purchaser for value of the financial asset." An entitlement holder is defined as a person having a security entitlement against the securities intermediary (UCC 8-102 [a] [7]). Thus, when Croesus, the entitlement holder, delivered the Certificate to Dabbah and was credited with the ownership of the Eclipse shares on Dabbah's books, Dabbah gave value as that term is used in UCC 8-303.

The IAS court, as to the second element requiring the purchaser's lack of notice of any adverse claim to the security, properly found that the record evidence makes it clear that Dabbah had no notice of the restrictions on the Certificate imposed by the agreement between Northwest and Croesus.

Finally, Dabbah also established the third criterion of a protected purchaser, namely, that it had obtained control over the security. UCC 8-106 (b) provides that a purchaser has "control" of a certificated security in registered form if the certificated security is delivered to the purchaser and "(1) the certificate is indorsed to the purchaser or in blank by an effective indorsement; or (2) the certificate is registered in the name of the purchaser, upon original issue or registration of transfer by the issuer."

UCC 8-102 (a) (11) defines indorsement as: "a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it."

Dabbah has satisfied both of the foregoing requirements as the security was delivered by its customer, Croesus, with the appropriate stock power and corporate resolution. Secondly, with respect to the indorsement, Croesus, in addition to delivering the shares to Dabbah, also delivered an irrevocable stock power, wherein Croesus "signed, assigned and transferred" the

shares to Dabbah's clearing agent, Ernst. Inasmuch as the stock power, by its own terms, was given to Dabbah for the purpose of transferring the Eclipse shares, the stock power constituted an effective indorsement pursuant to UCC 8-102 (11). We find respondents' argument that Dabbah was required to show that its control of the stock certificate was "current" and not "historical" is not supported by the language of UCC 8-303, and Comment 2 thereto simply provides that "[t]o qualify as a protected purchaser there must be a time at which all of the requirements are satisfied." Here, there was such a time.

Having concluded that plaintiff was, in fact, a protected purchaser, we must now address the issue of what damages, if any, are warranted. It is undisputed that plaintiff's agent, Ernst, recovered the full 500,000 shares that were originally transferred to that clearinghouse, and that Ernst's only damages, which consequently became plaintiff's damages, were Ernst's attorneys' fees in recovering those shares. Since those shares have already been recovered by plaintiff's agent, to which plaintiff transferred the shares, we perceive no basis upon which plaintiff would be entitled to another 500,000 shares. We also perceive no ground upon which to award plaintiff Ernst's attorneys' fees, for which plaintiff became liable as the result of a separate agreement between plaintiff and its agent, Ernst. Concur—Nardelli, J.P., Buckley, Ellerin, Lerner and Rubin, JJ.